IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-221 |
| EUDDY IZQUIERDO | : | |

**GOVERNMENT'S TRIAL MEMORANDUM**

I.     **THE INDICTMENT AND PROCEDURAL HISTORY**

The defendant was indicted by a grand jury on July 6, 2022, and charged with possession with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of para-fluorofentanyl, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, 100 grams or more of a mixture and substance containing a detectable amount of heroin, 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), and a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C) (Count One); maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2) (Count Two); possession of a firearm by a felon, in violation 21 U.S.C. § 922(g)(1) (Count Three); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four). On January 26, 2024, this Court denied the defendant's motion to dismiss Count Three of the indictment. On May 23, 2024, this Court denied the defendant's motions to suppress physical evidence and his statement to law enforcement.

On June 3, 2024, the government filed a notice to seek enhanced penalties for a recidivist drug offender, pursuant to 21 U.S.C. § 851.

Trial is scheduled for June 17, 2024.

## II.     SUMMARY OF THE FACTS

In the Spring of 2021, members of Drug Enforcement Administration ("DEA") Task Force Group 51 ("TFG-51") started conducting an investigation of defendant Euddy Izquierdo for his role in a money laundering operation in which the defendant transferred two large sums of drug proceeds ($49,990 and $70,020 in U.S. currency) to undercover DEA operatives.

In November 2021, members of TFG-51 obtained a federal tracking warrant authorizing the installation and monitoring of a tracking device on the defendant's BMW sedan with PA registration KWY-3978. As a result of their surveillance, members of TFG-51 identified 2053 Sanger Street in Philadelphia, where it was suspected that the defendant possessed controlled substances. The defendant did not reside at this location and did not appear to regularly spend the overnight hours there. This also appeared to agents to be a place that only the defendant accessed, as no one else was observed there on surveillance. Members of TFG-51 also observed that the defendant frequented the area of Indiana Avenue and A Street in Philadelphia, which is known to be a high drug trafficking area.

In December 2021, DEA personnel installed a pole camera that captured the rear of 2053 Sanger Street. Tracker activity and pole camera video revealed that the defendant traveled to 2053 Sanger Street multiple times per day. On most days after visiting the apartment, the defendant traveled directly to the area of Indiana Avenue.

On January 5, 2022, law enforcement accessed the pole camera which oversees Indiana Ave in the area of A Street at which time the defendant was depicted in the area. Task Force

Officers observed the defendant pass a small black grocery bag to a corner drug dealer and later receive U.S. currency from another corner dealer.

On January 8, 2022, the defendant traveled to New Jersey and later returned on the morning of January 9, 2022. He was observed going to the apartment at 2053 Sanger Street and later stayed there overnight and into January 10, 2022. This activity was inconsistent with his regular activities and routine. By 3:00 p.m. on January 10, the defendant had not left 2053 Sanger Street, which again appeared to be inconsistent with his regular activities. Agents took note of this and went to the area of the location to conduct physical surveillance.

On January 10, 2022, at 3:53 p.m., during surveillance, the defendant was observed exiting the apartment at 2053 Sanger Street while carrying a large black bag which he placed in the rear seat of his BMW. He then left the area in the BMW. Following his departure, at approximately 3:58 p.m., uniformed Philadelphia Police officers to conduct a traffic stop of the BMW on Torresdale Avenue in the area of Margaret Street. Once the vehicle was stopped, the officers took note of the defendant, who was the sole occupant of the vehicle, and a black trash bag inside the car and relayed that information to DEA agents; namely, that they suspected the bag to contain drug paraphernalia and that the defendant appeared nervous and stated that he was coming from Torresdale Avenue, when in fact he was coming from Sanger Street which was over a mile away.

DEA Task Force Officers Thomas Fahy and Joseph Fallon approached the defendant and identified themselves as law enforcement. The defendant denied his involvement in criminal activity provided written consent to search his vehicle. A search of the vehicle revealed a box for

3

an electric coffee grinder, which law enforcement identified as a device commonly used to process powdered drugs, and three cell phones.

Following the search and recovery of these items, TFOs Fahy and Fallon informed the defendant that they knew he came from 2053 Sanger Street and that they had been investigating him. The defendant then admitted using 2053 Sanger Street as a location where he stored drugs and a firearm. Task Force Officers Fahy and Fallon then drove the defendant to the area of 2053 Sanger Street, where the defendant provided his written consent to search that location.

Members of TFG-51 entered the apartment utilizing the key provided by the defendant. The apartment was found to be unoccupied, and agents observed a large table in the middle of the main bedroom upon which powdered drug evidence and packaged drug evidence were strewn about. Agents observed drug packaging materials such as clear plastic bags, blue wax bags, plastic containers, and various stamps and ink pads. They also recovered a Taurus PT111, 9mm semi-automatic pistol, bearing serial number ACD754105 loaded with twelve live rounds of 9mm ammunition, ten additional live rounds of 9mm ammunition, and two 9mm magazines in the main bedroom.

The defendant was then transferred to the DEA Philadelphia Field Division office. He was provided with water and presented with an Advice of Rights form, which he signed and acknowledged his willingness to speak to agents without a lawyer. An interview began at 7:32 p.m. and concluded at 9:54 p.m. The defendant admitted the offense conduct, and he provided information to law enforcement about his drug trafficking and money laundering activities.

Following the collection of evidence from the defendant's stash house at 2053 Sanger Street, the drugs were submitted to the DEA Northeast Laboratory in New York City. Chemists'

analyses confirmed the following substances and weights attributable to the evidence seized from 2053 Sanger Street:

- 237.8 grams of para-fluorofentanyl;
- 93.1 grams of fentanyl;
- 132.1 grams of heroin;
- 29.7 grams of crack cocaine;
- 153.8 grams of cocaine; and
- 26 grams of xylazine and other combinations of various dilutants and cutting agents.

The 9mm Taurus firearm recovered was submitted to the Philadelphia Police Department's Firearms Identification Unit and was test fired and determined to be operable. Moreover, a certified firearms expert inspected the firearm and concluded that the firearm was not manufactured in the Commonwealth of Pennsylvania and by its presence in Philadelphia, interstate commerce was affected.

The defendant's arrest and subsequent indictment was a violation of the conditions of his supervised released and he was detained pending a violation hearing before the Honorable Gene E.K. Pratter. The defendant has a prior federal drug conviction from this District in 2015. In that case, he was convicted of one count of conspiracy to distribute one kilogram of more of heroin, and one count of possession with intent to distribute one kilogram or more of heroin, and aiding and abetting. He was sentenced to a term of 108 months' imprisonment and five years of supervised release upon that conviction. The defendant later testified against his co-conspirators at their trial. As a result of his substantial assistance, the government filed a motion under Federal Rule of Criminal Procedure 35(b), prompting the Court, in 2017, to re-sentence the defendant a term of 54 months' imprisonment, which below the otherwise applicable guideline range and 10-year mandatory minimum. As a result of his prior conviction, the defendant was not permitted to possess a firearm under federal law. Further, as a result of his conviction for a

5

serious drug felony within 15 years of the instant offenses charged in the indictment, and the defendant's incarceration on that prior conviction for 4 years and 8 days, he is eligible for an enhanced sentence on Count One pursuant to 21 U.S.C. § 851.

In February 2022, the defendant was released from custody based upon DEA's request through U.S. Probation, and the Honorable Gene E.K. Pratter permitted the defendant to continue working with law enforcement and abide by terms and conditions imposed by his U.S. Probation officer even though he was in "violation" status as a result of his arrest in this case. After several weeks of remaining in contact with U.S. Probation, the DEA agents, and his attorney, the defendant fled to the Dominican Republic. In July 2022, the U.S. Marshals captured the defendant in the Dominican Republic and he was returned to the Eastern District of Pennsylvania and detained pending trial.

### III. EVIDENCE PRESENTED AT TRIAL

The government's proofs at trial will consist of the following:

1. Testimony from DEA Task Force Officers relating to their investigation of the defendant for money laundering and drug trafficking, as well as the vehicle stop of the defendant, the recovery of the contraband from 2053 Sanger Street, and his post-arrest interview statements;
2. Photographs of the interior of 2053 Sanger Street;
3. The *Miranda* waiver form and consent forms bearing the defendant's name and signature as well as the signed interview statement;
4. The physical drug evidence, drug paraphernalia, and the firearm;
5. Laboratory reports confirming the presence of controlled substances and their respective weights.
6. Stipulations between the parties related to the chemists' analysis and firearm examination.
7. Certified conviction records establishing the defendant's prior federal drug conviction.
8. Records from the Federal Bureau of Prisons calculating the defendant's time in federal custody as a result of his prior conviction

IV.   **WITNESSES**

The Government expects to call the following witnesses in its case-in-chief:

1. **DEA Task Force Officer Thomas Fahy** (Investigating and Arresting Officer)
2. **Bucks County Sergeant Joseph Fallon (former DEA Task Force Officer)** (Investigating and Arresting Officer)
3. **DEA Task Force Officer Dale T. Keddie** (Searching Officer and Photographer of 2053 Sanger Street)
4. **DEA Special Agent Brian Sartori** (Supervising Agent and Chain of Custody Agent)
5. **DEA Task Force Officer Michael Reynolds** (Expert in Drug Trafficking Organizations)[1]
6. **DEA Special Agent Michael Beck** (Arresting Officer in Defendant's Underlying Conviction)

The government reserves the right to supplement its witness list as may be required once the defense provides an indication as to what, if any, defense will be advanced or whether the defense intends to put on a case. The government reserves the right to call the witnesses in any order and expand upon or limit the proposed testimony above.

V.   **STIPULATIONS**

The government and the defense have agreed upon the following stipulations in lieu of live witness testimony: (1) that the contents of the drug exhibits contained – para-flourofentanyl, a Schedule I controlled substance, weighing 237.8 grams; cocaine base ("crack"), a Schedule II controlled substance, weighing 29.7 grams; cocaine, a Schedule II controlled substance, weighing 153.8 grams; heroin, a Schedule I controlled substance, weighing approximately 72 grams; and fentanyl, a Schedule II controlled substance, weighing a total of 153.2 grams; (2) that the firearm was operable and travelled in interstate commerce; and (3) that the defendant was

---

[1] The government has provided the defense with a copy of its expert witness's *curriculum vitae* and a letter outlining the scope of the expert's anticipated testimony.

7

previously convicted of a felony punishable by more than one year in prison. The signed stipulations have been filed to the docket.

## VI. <u>TRIAL ISSUES</u>

### A. **Evidence of Money Laundering**

The government has filed a motion *in limine* to admit as intrinsic or pursuant to Rule 404(b) testimony about defendant's involvement in money laundering during the course of the DEA's investigation leading up to his arrest on January 10, 2022. The government submits that DEA Task Force Officer Thomas Fahy will provide background evidence of the investigation on the scope of the DEA's investigation of the defendant. In the event the Court grants the government's motion, the government has already included the Third Circuit's Model Jury Instruction 2.23 (Defendant's Prior Bad Acts or Crimes) in its proposed jury instructions filed separately to the docket.

### B. **Evidence of the Defendant's Flight Following His Release from Custody**

The government's has also filed a motion *in limine* seeking to admit testimony related to the defendant's flight from the United States following his arrest and release from custody prior to the indictment in this case. The government submits that this evidence is relevant as proof of the defendant's consciousness of guilt. The government submits that the Third Circuit's model instruction on this issue is sufficient. In the event the Court grants the government's motion, the government has already included the Third Circuit's Model Jury Instruction 4.30 (Consciousness of Guilt) in its proposed jury instructions filed separately to the docket.

### C. **The Defendant's Discovery Obligations**

The government notes that its obligation to make available pretrial discovery materials is

governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. That rule requires the government to produce certain categories of information upon request of the defendant. Fed. R. Evid. 16(a). However, once the defendant demands discovery material the government is entitled to request and receive certain reciprocal discovery from the defendant. Fed. R. Evid. 16(b). In regulating discovery, the court may, if a party fails to comply with its obligations, "prohibit that party from introducing the undisclosed evidence." Fed. R. Evid. 16(d)(2)(C).

The government has not received any material or reciprocal discovery from the defendant to date. If the government does not receive timely reciprocal discovery, the government may move to preclude the defendant from presenting during his case-in-chief any photographs, books, papers, documents, data, tangible objects, buildings, places, or copies thereof as required pursuant to a reciprocal discovery demand made by way of Federal Rule of Evidence 16(b)(A). Similarly, the government may move to preclude the defendant from presenting during his case-in-chief any evidence or reports of physical, mental, or scientific examinations or the use of expert testimony as required pursuant to a reciprocal discovery demand made by way of Federal Rule of Evidence 16(b)(B) and (C).

### D. Evidence Presented in Electronic Format

The government will provide defense counsel with an electronic copy of the exhibits prior to the start of testimony. Further, in order to move efficiently while presenting the evidence, the government will use a trial presentation program for exhibits to be displayed electronically to the jury.

VII. **STATUTES AND ELEMENTS OF THE OFFENSES**

**21 U.S.C. § 841(a)(1), (b)(1)(A) – Possession with intent to distribute more than 100 grams of para-fluorofentanyl**

To obtain a conviction for possession with intent to distribute a controlled substance under 21 U.S.C. §841(a)(1) and (b)(1)(A), the government would have to prove that a defendant:

1. possessed a mixture or substance containing N-(4-Fluorophenyl)-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide) ("para-fluorofentanyl"), a Schedule I controlled substance;

2. knowingly or intentionally possessed the controlled substance with the intent to distribute it; and

3. the controlled substance was 100 grams or more of a mixture of substance containing a detectable amount of para-fluorofentanyl.

See Third Circuit Model Jury Instructions (Criminal) 6.21.841A

**21 U.S.C. § 841(a)(1), (b)(1)(B) – PWID more than 40 grams of fentanyl**

To obtain a conviction for possession with intent to distribute a controlled substance under 21 U.S.C. §841(a)(1) and (b)(1)(B), the government would have to prove that a defendant:

1. possessed a mixture or substance containing N-phenyl-N- [1-(2-phenylethyl)-4-piperidinyl] propenamide ("fentanyl"), a Schedule II controlled substance;

2. knowingly or intentionally possessed the controlled substance with the intent to distribute it; and

3. the controlled substance was 40 grams or more of a mixture of substance containing a detectable amount of fentanyl.

See Third Circuit Model Jury Instructions (Criminal) 6.21.841B

**21 U.S.C. § 841(a)(1), (b)(1)(B) – Possession with intent to distribute more than 100 grams of heroin and 28 grams of cocaine base**

To obtain a conviction for possession with intent to distribute a controlled substance under 21 U.S.C. §841(a)(1) and (b)(1)(A), the government would have to prove that a defendant:

1. possessed a mixture or substance containing heroin, a Schedule I controlled substance, or cocaine base ("crack"), a Schedule II controlled substance;

2. knowingly or intentionally possessed the controlled substance with the intent to distribute it; and

3. the controlled substance was 100 grams or more of a mixture of substance containing a detectable amount of heroin, and 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack").

See Third Circuit Model Jury Instructions (Criminal) 6.21.841B

**21 U.S.C. § 841(a)(1), (b)(1)(C) – Possession with intent to distribute mixture and substance containing cocaine**

To obtain a conviction for possession with intent to distribute a controlled substance under 21 U.S.C. §841(a)(1) and (b)(1)(C), the government would have to prove that a defendant:

1. possessed a mixture or substance containing cocaine, a Schedule II controlled substance;

2. knowingly or intentionally possessed the controlled substance with the intent to distribute it; and

3. the controlled substance contained a mixture and substance containing a detectable amount of cocaine.

See Third Circuit Model Jury Instructions (Criminal) 6.21.841C

**21 U.S.C. § 856(a)(2) – Maintaining a drug-involved premises**

To establish a violation of 21 U.S.C. §856(a)(2), the government must prove the following elements beyond a reasonable doubt:

11

1. First, that the defendant managed or controlled the premises identified in the indictment as an owner, lessee, agent, employee, occupant, or mortgagee;

2. Second, that the defendant made available for use with or without compensation that property as alleged in the indictment;

3. Third, that the occupants used the place for the purpose of manufacturing, storing, or distributing controlled substance; and

4. Fourth, that the defendant acted knowingly and intentionally.

See 3 L. Sand, et al, Modern Federal Jury Instructions - Criminal, Instruction No. 56-45 (2018) (unmodified).

**18 U.S.C. § 922(g)(1) – Possession of a firearm by a felon**

To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove the following elements beyond a reasonable doubt:

1. that the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year;

2. that after this conviction, the defendant knowingly possessed the firearm described in the information;

3. that at the time the defendant possessed the firearm, the defendant knew of the previous conviction and knew that is was for a crime punishable by imprisonment for a term exceeding one year; and

4. that defendant's possession was in or affecting interstate commerce.

Third Circuit Model Criminal Jury Instructions 6.18.922G.

**18 U.S.C. § 924(c)(1)(A) – Possession of a firearm in relation to (or in furtherance of) a drug trafficking crime**

To establish a violation of Title 18, United States Code, Section 924(c)(1), the government must prove the following elements beyond a reasonable doubt:

1. The defendant committed a drug trafficking crime for which he may be prosecuted in a court of the United States;

2. The defendant knowingly possessed a firearm; and

3. The possession of the firearm was in furtherance of the defendant's drug trafficking crime.

<u>See</u> Third Circuit Model Jury Instructions (Criminal) 6.18.924A

## VIII. **OTHER ISSUES**

Potential rebuttal witnesses may exist, and the defendant may elect to present a defense; if he does, the government reserves its right to call its own rebuttal witnesses, if deemed necessary and appropriate, and may request a brief adjournment during trial to evaluate any rebuttal case.

Jury instructions, verdict sheets, and *voir dire*, will be filed under separate cover.

The government anticipates that its case-in-chief will be concluded within two days.

    Respectfully submitted,

    JACQUELINE C. ROMERO
    United States Attorney

    */s/ Justin Ashenfelter*
    JUSTIN ASHENFELTER
    Assistant United States Attorney

Date:   June 3, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Trial Memorandum has been served, by me, by electronic filing on defense counsel:

Jeremy H.G. Ibrahim, Esq.
jeremyibrahim.esq@gmail.com

 */s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

Date: June 3, 2024